Abraham Rozenfeld v. Commissioner.
Rozenfeld v. Commissioner
Docket No. 13429.
United States Tax Court
1949 Tax Ct. Memo LEXIS 158; 8 T.C.M. (CCH) 556; T.C.M. (RIA) 49139; June 9, 1949
Louis Haimoff, Esq., 70 Pine Street, New York, N. Y., for the petitioner. Stephen P. Cadden, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income taxes for the fiscal year ended November 30, 1942, in the amount of $2,325.32 as the result of his disallowance of a claimed deduction for war loss under section 127 of the Internal Revenue Code. The facts in this proceeding, being all stipulated, are not in dispute. We adopt the stipulation filed as our findings of fact. Findings of Fact The petitioner, a former Polish national, and now a citizen of the United States, is an individual residing at Elmhurst, *159 New York. His income tax return for the period here involved was filed with the collector of internal revenue for the first district of New York. Beginning in 1930 the petitioner owned and operated a ribbon factory situated in the City of Lodz, Poland. It is stipulated that petitioner's adjusted cost basis for the factory was not less than $12,675.96. It is not stated at what date that adjusted cost basis applied. On or about September 1, 1939, the factory was seized by the German Army when it invaded Poland. The Germans were in possession of the factory and operated it without interruption from September 1939 until January 1945, when they were forced to relinquish it. During their possession of the factory, the Germans enlarged and improved it. The Germans were in possession of and operating the factory on December 11, 1941, the date of the declaration of war on Germany by the United States. At no time during the period of the German occupation did the petitioner have possession or control of the factory. The records of the Polish Government indicate that title to the factory was in the petitioner after the expulsion of the Germans in January 1945. In February 1945 the factory *160 was taken over by the Polish Office of Temporary Management, which entrusted it to a board of managers. On January 28, 1947, the Municipal Commission for Nationalization in Lodz nationalized the property. On or about October 15, 1945, petitioner filed a claim against the Polish Government for the factory at the time it was taken over by the Polish Office of Temporary Management. Opinion LEMIRE, Judge: The only issue in this proceeding is whether petitioner is entitled to the deduction of a war loss claimed on certain property in Poland under section 127 (a) (2), Internal Revenue Code. This section provides in part that: "* * * Property within any country at war with the United States, or within an area under the control of any such country on the date war with such country was declared by the United States, shall be deemed to have been destroyed or seized on the date war with such country was declared by the United States." Since the property here involved was located in Lodz, Poland, an area within German control on December 11, 1941, the date of the declaration of war upon Germany by the United States, the question here is whether petitioner's property *161 was "destroyed or seized" on that date within the meaning of section 127 (a) (2). In Ernest Adler, 8 T.C. 726, we cited and quoted with approval (A)-1 section 29.127 (a)-1 of Treasury Regulations 111 as correctly interpreting the applicable provisions of section 127. The portion of that regulation applicable here is as follows: "For property to be treated as resulting in a war loss, such property must be in existence on the date prescribed in section tion 127 (a) (2) as the date it is deemed destroyed or seized * * *, and for the taxpayer to claim a loss with respect to such property he must own such property or an interest therein at such time. If, before such time, the property was destroyed or confiscated, section 127 is not applicable with respect to such property. For example, a taxpayer owned property in an enemy country before war was declared on such enemy by the United States, and such property was confiscated by the enemy before the date war was declared. The seizure was not in the course of military or naval activities. The taxpayer may not claim a war loss with respect to such property under section 127." We think that the intent *162 of section 127 (a) (2) was to deal with the problem of proving loss by a taxpayer owning property in an enemy country or area at the time the United States declared war on such country. Ernest Adler, supra. The petitioner argues that the German Army had no legal right to seize his property in 1939, that he was not divested of title, and that the likelihood of his recovery of the property was measured solely by the prospect of Allied success in World War II. He then argues that since he alone was vested with the rightful title to the property during the entire period of the German occupation of his property on the records of the Polish Government-in-Exile, the Germans were mere interlopers who deprived him of only temporary possession of the property. Respondent argues that since the German Army seized petitioner's property in 1939 and was in uninterrupted possession and control of it from 1939 to 1945, petitioner had nothing to lose on December 11, 1941, having lost his property in 1939, when the Germans seized it. The property's physical existence in 1945 after the Germans relinquished it evidences its existence on December 11, 1941, although petitioner himself *163 left it in 1939. Cf. Benjamin Abraham, 9 T.C. 222. Petitioner did own the rightful legal title to the property throughout the entire period of "unlawful" German occupation of it. However, we do not agree with petitioner's contention that the German seizure of the property in 1939 amounted to little more than a trespass and that petitioner "owned" the property on December 11, 1941, within the meaning of section 127 (a) (2). We think that Congress intended to apply the presumption of loss created by that section only to cases where the taxpayer owned property in enemy-controlled areas subject to actual loss on or after the date of declaration of war upon that enemy by the United States. That intention is made apparent by the following language from Senate Report No. 1631, 77th Congress, 2d session. (C.B. 1942-2, pp. 599-600): "* * * Under present conditions it is frequently impossible to determine when, if at all, the enemy country has formally seized the property located in an area under its control. Furthermore, enemy countries today exercise such control over the property of their enemies within their territory that the loss of such property is in fact sustained whether *164 or not the country undertakes the formality of issuing a sequestration decree on making an actual seizure. It is a matter of conjecture as to what condition the property will be in at the termination of the war. Accordingly, such property is treated as lost upon the date war is declared * * *." (Italics supplied.) For the petitioner to establish his case for deduction of a war loss on December 11, 1941, he must prove the existence of the property on that date, his ownership of it, and the amount of the properly adjusted cost basis of the property on that date. Ernest Adler, supra; Eric H. Heckett, 8 T.C. 841; Benjamin Abraham, supra. Petitioner has proved the existence of the property in 1941 and its adjusted cost basis, but we do not believe that he has proved that he had such ownership of it in 1941 as is meant by section 127 (a) (2). Petitioner had fled the country in 1939, and the Polish Government, which recognized his legal title to the property, was also in exile. The Germans had complete and uninterrupted control and possession of the property from 1939, when they seized it, to 1945, when they were forced to relinquish it. When petitioner *165 lost control and possession of the property in 1939, his loss of the property was, for all practical purposes, complete. Any value which might be assigned to his legal title and right to eventual return of the property was purely conjectural in 1939, since at that time petitioner had no assurance of the continued existence of the property or of when, if ever, he might recover it. Petitioner contends that in Benjamin Abraham, supra, a distinction was made between the treatment of real and personal property under section 127 (a) (2), which controls this case. In that case the taxpayer owned real and personal property in an area in France occupied by the Germans in 1940. The taxpayer left France in 1940, leaving his property in the care of a neighbor. When he returned to France in 1946, most of his property was intact, although much of the personal property was gone. This Court allowed the taxpayer to deduct the adjusted value of the real property as a war loss of 1941 under section 127 (a) (2) but denied deductions claimed for the personal property. We think the cases are distinguishable. In the Abraham case the taxpayer did not lose his property before December 11, 1941, within *166 the meaning of section 127 (a) (2). The German Army occupied the area of France where the taxpayer's property was located, but there was no evidence that it ever actually seized physical posession of the taxpayer's property. Here, the Germans did seize actual, physical possession of petitioner's property in 1939. Since the petitioner lost his property in 1939 through seizure by the German Army he is not entitled under section 127 (a) (2) to a deduction for loss of the property on December 11, 1941. Decision will be entered for the respondent.